# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHESAPEAKE OPERATING, INC., an Oklahoma corporation, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | NO. CIV-12-55-D |
| PINTAIL PRODUCTION CO., INC., a Texas corporation, | ) ) ) ) | |
| Defendant, | ) ) ) | |
| vs. | ) ) ) | |
| INDIGO MINERALS, LLC, a Delaware limited liability company, | ) ) ) ) | |
| Third-Party Defendant. | ) | |

## ORDER

Before the Court is Pintail's Motion in Limine to Limit Testimony and Evidence to Wells at Issue and Brief in Support [Doc. No. 56]. The matter is fully briefed and ready for disposition.

In this action, Plaintiff, Chesapeake Operating, Inc. (Chesapeake), seeks to recover from Defendant, Pintail Production Co., Inc. (Pintail), damages for unpaid expenses Pintail allegedly owes pursuant to the parties' Joint Operating Agreement and covering the drilling of two oil and/or gas wells identified as the Lowry 1-7H well and the Lowry 2-7H well (the Lowry Wells). Pintail has filed a counterclaim pursuant to which it seeks an accounting against Chesapeake for production from the Lowry Wells "and for numerous other wells." *See* Counterclaims [Doc. No. 19-1] (Wells Operated by Chesapeake – listing 46 wells).

In the motion in limine, Pintail contends that any determination of its net obligations to Chesapeake must be based solely on revenue and expenses related to the Lowry Wells because only

those wells are the subject of Chesapeake's claims in the complaint. Further, Pintail contends that it has limited the scope of its counterclaims for an accounting to the Lowry Wells and 14 additional wells. Therefore, Pintail contends only 16 wells are at issue in this lawsuit. Relying in part on standards governing amendment of pleadings, Pintail seeks to exclude evidence concerning 84 other wells referenced in the report of Chesapeake's expert, Melissa Gruenewald.[1] According to Pintail, those 84 wells are not part of the claims identified in the complaint, are not part of Pintail's counterclaims and have not been the subject of the parties' discovery conducted in this action. Pintail claims that if Chesapeake were allowed to introduce evidence of revenues and expenses on the 84 other wells to establish Pintail's net obligations to Chesapeake, Pintail would be unduly prejudiced. Pintail claims Chesapeake should not be granted leave to amend the complaint and the evidence should be excluded on relevancy grounds pursuant to Fed. R. Evid. 402.

In response, Chesapeake contends that throughout the litigation, the parties have proceeded with the understanding that its claim for "netting" of expenses and revenues, in accordance with "customary accounting practices in the industry," has entailed all 100 Chesapeake-operated wells in which Pintail owns an interest and has not been limited to the 16 wells identified in Pintail's motion in limine.[2] Chesapeake contends that separate and apart from Ms. Gruenewold's expert report, the allegations of the complaint, the parties' Rule 26 disclosures and discovery between the

---

[1] Ms. Gruenewald's April 15, 2013 expert report states, inter alia, that Chesapeake's accounting is "based upon the netting of all joint interest billings owed by Pintail, all sales revenues owed to Pintail, all payments by Chesapeake to Pintail, and all payments by Pintail to Chesapeake *for approximately 100 different oil and gas properties [including eighty-four (84) properties that are not part of the Browning Unit or the Lowry Unit] for many years*." *See* Gruenewald Report [Doc. No. 56-2] (brackets in original; emphasis added).

[2] Neither party has supplied the Court with evidentiary material to demonstrate the parties' course of dealing or standard industry practices with respect to "global netting" of expenses and revenues. Chesapeake's document production suggests Pintail received monthly statements detailing Pintail's share of revenue and expenses as to all 100 wells. *See* Chesapeake's Surreply [Doc. No. 69] at p. 2 and [Doc. No. 69-1] (Chesapeake sample document production).

2

parties has included this information and that Pintail has been duly put on notice of Chesapeake's intent to rely upon netting of expenses and revenues as to all 100 wells to determine the extent of Pintail's obligations.

In moving for exclusion of the evidence, Pintail does not challenge Chesapeake's right to application of the equitable doctrines of recoupment and/or setoff. *See generally Nelson v. Linn Midcontinent Exploration, L.L.C.*, 228 P.3d 533, 535 (Okla. Civ. App. 2009) ("The equitable doctrine of set-off permits the set-off of an obligation under one contract against the obligation of any other contract between the same parties, so that Defendant could properly recover overpayments on one well against the amounts due Plaintiff from the other."). Instead, Pintail challenges the scope of that right and seeks to exclude evidence of Chesapeake's netting of expenses and revenues as to the 84 wells identified in Ms. Gruenewald's expert report.

A review of the complaint, the parties' Rule 26 disclosures and the discovery attached to the parties' respective briefing on the motion in limine persuades the Court that Chesapeake's claims incorporate a request for netting of expenses and revenues as to all 100 Chesapeake-operated wells in which Pintail owns an interest and that Pintail has been apprised of Chesapeake's claims. While the allegations of the complaint only identify the Lowry Wells, the allegations reference the right to set-off and/or recoupment and expressly state that Pintail's unpaid share of expenses owed to Chesapeake is $805,245.82 "[a]fter netting of proceeds of production owed by Chesapeake to Pintail." Complaint at ¶ 14.[3] To the extent the Complaint's allegations regarding "netting of proceeds" is vague as to scope, the subsequent Rule 26 disclosures and Joint Status Report and

---

[3] In responding to Pintail's Motion in Limine, Chesapeake reiterates that the amount of $805,245.82 reflects Pintail's net obligation "after application of revenues and expenses from all of the [Chesapeake-operated] Wells [in which Pintail owns an interest]." Response [Doc. No. 63] at p. 3.

Discovery Plan clarify any ambiguity. *See* Response [Doc. Nos. 63-1 and 63-2, respectively]. The Court further notes that in its First Amended Answer [Doc. No. 19], Pintail specifically requests that "Chesapeake be ordered to make a complete accounting to Pintail ***for all production from all wells operated by Chesapeake in which Pintail has a working interest*** . . . ." *Id*. at p. 3 (emphasis added). In addition, it appears that subsequent discovery conducted by the parties has sought information and document production relevant to netting of revenues and expenses as to all 100 wells. *See, e.g.,*Surreply [Doc. No. 69-1] (Chesapeake sample document production).[4] At the very least, Chesapeake's expert report has put Pintail on notice as to the scope of Chesapeake's request for recoupment and/or setoff. That expert report was filed months in advance of the final pretrial report and a few weeks prior to the discovery deadline.

Pintail's motion in limine is focused upon undue surprise and resulting prejudice and the premise that amendment of the complaint is required before evidence can be considered as to revenue and expenses on the 84 wells not identified in its motion in limine. Pintail does little to address relevancy issues and has not challenged Chesapeake's claim that a right to recoupment and/or setoff exists. Amendment of the complaint is not an issue presently before the Court and the record presented on the motion in limine indicates Pintail has had sufficient notice of Chesapeake's application of "global netting" to determine the obligations allegedly owed by Pintail. Accordingly, at this time the Court finds the evidence Pintail seeks to exclude is relevant under Fed. R. Evid. 402 and DENIES Pintail's Motion in Limine.

---

[4]Pintail contends that during the course of discovery it limited the scope of its counterclaims to only the 16 wells identified in its motion in limine. Accepting that contention as true for purposes of Pintail's motion in limine, as Chesapeake points out, that does not necessarily equate to a limitation on the wells which underlie Chesapeake's claims.

However, the Court bases its denial, in part, on the fact that this is a non-jury trial and that the admissibility of the challenged evidence may be subject to further evaluation in the context of the trial evidence. Accordingly, the denial of Pintail's motion in limine is without prejudice to its right to reassert the evidentiary challenge at trial, if appropriate.

IT IS SO ORDERED this 27th day of March, 2014.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE